**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re:<br><br>BM318, LLC,<br><br>Debtor. | §<br>§<br>§<br>§<br>§<br>§ | Case No. 20-42789 |
| Timothy Barton, *et al.*,[1]<br><br>Appellants,<br><br>v.<br><br>Cortney C. Thomas, Receiver, *et al.*,<br><br>Appellees. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:24-cv-863-P<br><br>*Appeal from Adv. No. 21-04051*<br>*U.S. Bankruptcy Court*<br>*Northern District of Texas* |

**JOINT MOTION TO DISMISS APPEAL**

NOW COME appellees The Dixon Water Foundation ("Dixon"), Cortney C. Thomas, in his capacity as the receiver (the "Receiver") for BM318, LLC (the "Debtor"), and Lumar Land & Cattle, LLC ("Lumar", and collectively with the Receiver and Dixon, the "Appellees"), and file this *Joint Motion to Dismiss Appeal* (the "Motion"), in support of which they respectfully show as follows:

[1] As set forth herein, Timothy Barton is not a proper appellant as he does not possess standing to bring this appeal either on behalf of BM318 or in his individual capacity.

# I. SUMMARY

1. In connection with its bankruptcy case, the Debtor sued Dixon in an adversary proceeding, and Lumar intervened. The District Court later appointed the Receiver to take control of the Debtor and numerous other entities. The Receiver, on behalf of the Debtor, Dixon, and Lumar then settled the adversary proceeding, the Bankruptcy Court entered orders approving the settlements and the District Court entered an order ratifying the settlements.

2. Barton, the Debtor's former president, appealed the District Court's ratification order but not the Bankruptcy Court's settlement orders. He did not seek a stay pending appeal. Meanwhile, in accordance with the Settlement (defined herein), the Bankruptcy Court entered an agreed judgment resolving the adversary proceeding. Barton, a stranger to the adversary proceeding, filed a notice of appeal, despite the fact that he never sought to intervene and never appeared in the adversary proceeding beforehand.

3. The Court should dismiss this appeal for at least the following three reasons. First, the Receivership Order deprived Barton of the corporate authority to initiate an appeal on behalf of the Debtor. Second, Barton does not have standing to appeal in his individual capacity. He is not a party to the adversary proceeding; he does not have Constitutional standing because he cannot establish injury or redressability; and he cannot satisfy the heightened "person aggrieved" standard that

applies in bankruptcy appeals. Third, even if Barton had standing, litigants cannot appeal from agreed judgments under applicable Fifth Circuit and Supreme Court precedent.

## II. BACKGROUND

4. On September 1, 2020, the Debtor filed a voluntary chapter 11 petition, thereby initiating Case No. 20-42789 (the "Bankruptcy Case") in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Bankruptcy Court").[2] Neither the Debtor's bankruptcy schedules nor the Bankruptcy Court's claims register list Barton as a creditor.[3]

5. On August 10, 2021, the Debtor filed Adv. No. 21-04051 (the "Adversary Proceeding") against Dixon, seeking to recover alleged preferential and fraudulent transfers.[4] The Bankruptcy Court entered an order authorizing Lumar to intervene on February 14, 2022,[5] and Lumar filed a complaint in intervention two days later on February 16, 2022.[6]

6. On November 29, 2023, the United States District Court for the Northern District of Texas, Dallas Division (the "District Court"), in Civ. Act. No.

---

[2] Appx. 1, 99.

[3] Appx. 97-98, 104-121.

[4] Appx. 16-18.

[5] Appx. 20 (Dkt. No. 32).

[6] Appx. 20 (Dkt. No. 33).

3:22-cv-2118-x (the "Receivership Proceeding"), entered its *Order Appointing Receiver* (the "Receivership Order").[7] Based on Barton's misconduct, the Receivership Order appointed the Receiver to take exclusive possession and control of the Debtor and numerous other entities.[8]

7. Vested with this authority, the Receiver, on behalf of the Debtor, entered into settlement agreements with Dixon and Lumar (collectively, the "Settlement") to resolve the Adversary Proceeding, and he caused the Debtor to join in filing joint motions to approve those settlements in the Bankruptcy Case (the "Settlement Motions").[9] The Bankruptcy Court entered orders approving the settlements on May 28, 2024 (the "Settlement Orders").[10] Barton did not appeal the Settlement Orders. The Settlement Orders are final and non-appealable. The Receiver then filed a motion to ratify the settlements in the Receivership Proceeding,[11] which the District Court granted on August 14, 2024 (the "Ratification Order").[12] Barton appealed the Ratification Order on August 21, 2024,[13] but he did not seek a stay pending appeal.

---

[7] Appx. 81 (Dkt. No. 417).

[8] Appx. 122-149.

[9] Appx. 13 (Dkt. Nos. 147, 149).

[10] Appx. 15 (Dkt. Nos. 163, 164).

[11] Appx. 90 (Dkt. No. 524).

[12] Appx. 92 (Dkt. No. 550).

[13] Appx. 93 (Dkt. No. 554).

8. Based on the court-approved Settlement, the Appellees—*i.e.*, the parties to the Adversary Proceeding—submitted an agreed judgment, which the Bankruptcy Court entered on August 26, 2024 (the "Agreed Judgment").[14] Barton, having never appeared in the Adversary Proceeding,[15] inexplicably filed a notice of appeal from the Agreed Judgment on September 6, 2024,[16] which he amended at the Clerk's request on September 10, 2024 (the "Notice of Appeal").[17] The Notice of Appeal suggests Barton appealed the Agreed Judgment "as President of [the Debtor], Pro Se …."[18] He signed the Notice of Appeal in his individual capacity, *pro se*.[19] Nevertheless, he hand-wrote "Appellant" next to the Debtor's name in the Notice of Appeal,[20] which evidently caused the Clerk to identify the Debtor as an appellant when transmitting the Appeal to this Court. Barton also failed to timely designate the record on appeal. There is nothing in the mini-record transmitted by the Clerk of Court that supports that Barton has standing nor would Barton be able to establish standing with any record.

---

[14] Appx. 150.

[15] The hearing to consider approval of the Settlement occurred in the Bankruptcy Court where the Settlement Motions were filed, not in the Adversary Proceeding. *See FDIC of Maryland v. Morris* (*In re Morris*), 950 F.2d 1531, 1534 (11th Cir. 1992) (an adversary proceeding is a distinct proceeding from a main bankruptcy case).

[16] Appx. 31 (Dkt. No. 144).

[17] Appx. 31 (Dkt. No. 147).

[18] Appx. 198.

[19] Appx. 200.

[20] Appx. 199.

## III. ARGUMENT & AUTHORITIES

### A. Barton lacks authority to initiate an appeal on behalf of the Debtor and therefore brings this appeal in his individual capacity only.

9. Barton lacks authority to initiate an appeal on behalf of the Debtor. Among other things, the Receivership Order provides as follows with respect to the "Receivership Entities," including the Debtor:

> 4. The trustees, directors, officers, managers, employees, investment advisers, accountants, attorneys and other agents of the Receivership Entities are hereby dismissed and the powers of any general partners, directors and/or managers are hereby suspended. Such persons and entities shall have no authority with respect to the Receivership Entities' operations or assets, except to the extent as may hereafter be expressly granted by the Receiver. The Receiver shall assume and control the operations of the Receivership Entities and shall pursue and preserve all of their claims.
>
> 5. No person holding or claiming any position of any sort with any of the Receivership Entities shall possess any authority to act by or on behalf of any of the Receivership Entities.
>
> 6. Subject to the specific provisions in Sections II through XII below, the Receiver shall have the following general powers and duties:
>
> * * *
>
> C. To manage, control, operate, and maintain the Receivership Estates and hold in his possession, custody, and control all Receivership Property, pending further Order of this Court;
>
> * * *

> J. To pursue, resist, defend, compromise or otherwise dispose of all suits, actions, claims, and demands which may now be pending or which may be brought by or asserted against the Receivership Entities[21]

10. Under the Receivership Order, in other words, the Receiver has the exclusive right to direct the Debtor's corporate governance and to prosecute or settle the Debtor's claims in the Adversary Proceeding. Barton appealed the Receivership Order,[22] but Barton did not seek a stay pending appeal. The Receivership Order therefore remains in full force and effect, *see Coleman v. Tollefson*, 575 U.S. 532, 539 (2015) ("Unless a court issues a stay, a trial court's judgment … normally takes effect despite a pending appeal."), so Barton lacks authority to act on the Debtor's behalf, whether by filing a notice of appeal or otherwise.

**B. Barton does not have standing to bring this appeal.**

11. Lacking authority to act on behalf of the Debtor, Barton also lacks standing in his individual capacity for three reasons. First, Barton is not a party to the Adversary Proceeding, and he never sought to intervene. Binding case law—including the Fifth Circuit's holding in a similar case involving Barton—prohibits non-parties from appealing. Second, Barton lacks constitutional standing. He did not suffer a concrete, particularized injury, and the Court cannot afford meaningful

[21] Appx. 124-129.

[22] Appx. 82 (Dkt. No. 429).

relief. Third, Barton lacks prudential standing because he is not a "party aggrieved" by the Agreed Judgment as required in bankruptcy appeals. The Court should therefore dismiss this appeal.

***i. Barton lacks standing because he was not a party to this litigation.***

12. Barton has done this before. As the Fifth Circuit recently summarized in a an analogous case where Barton likewise sought to appeal a judgment to which he was not a party:

> "The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled." *Marino v. Ortiz*, 484 U.S. 301, 304 (1988); *see also Bayard v. Lombard*, 50 U.S. 530, 546 (1850) (holding that a writ of error "cannot be sued out by persons who are not parties to the record, . . . [or] by strangers to the judgment and proceedings . . . "); *Payne v. Niles*, 61 U.S. 219, 221 (1857) ("[I]t is very well settled in all common-law courts, that no one can bring up, as plaintiff in a writ of error, the judgment of an inferior court to a superior one, unless he was a party to the judgment in the court below . . . ."); *United States ex rel. La. v. Boarman*, 244 U.S. 397, 402 (1917) (describing the principle proscribing nonparty appeals "as a subject no longer open to discussion").
>
> The courts of appeals have recognized limited exceptions to this rule. The Supreme Court has regarded these exceptions with, at best, skepticism. *See Marino*, 484 U.S. at 304 ("The Court of Appeals suggested that there may be exceptions to this general rule, primarily when the nonparty has an interest that is affected by the trial court's judgment . . . . We think the better practice is for such a nonparty to seek intervention for purposes of appeal; denials of such motions are, of course, appealable." (internal quotation marks and citation omitted)); *United*

> *States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009) ("The Court has further indicated that intervention is the requisite method for a nonparty to become a party to a lawsuit.").

*Barton v. HNGH Turtle Creek, LLC (In the Matter of 2999TC Acquisitions, LLC)*, No. 23-10648, 2024 WL 1283342, *1-2 (5th Cir. Mar. 26, 2024) (quoting *United States v. Slovacek*, 699 F.3d 423, 426–27 (5th Cir. 2012) (parallel citations omitted)).

13. As set forth succinctly by the United States Supreme Court, "A 'party' to litigation is '[o]ne by or against whom a lawsuit is brought.' . . . An individual may also become a 'party' to a lawsuit by intervening in the action." *United States, ex rel. Eisenstein v. City of New York,* 556 U.S. 928, 933 (2009) (internal citations omitted). Barton never sought to intervene in the Adversary Proceeding. He did not appear until he filed his notice of appeal.[23] He also failed to intervene or appear in *Barton v. HNGH Turtle Creek*, 2024 WL 1283342, and the Fifth Circuit dismissed his appeal. The Court should therefore dismiss this appeal for the same reason the Fifth Circuit dismissed Barton's appeal in *Barton v. HNGH Turtle Creek*, 2024 WL 1283342—"he cannot appeal as a stranger to the proceeding below." *Id.* at * 2.

---

[23] The Bankruptcy Case and the Adversary Proceeding are two distinct cases and proceedings, therefore, Barton's appearance to orally object to the Settlements in the hearing in the Bankruptcy Case did not constitute an appearance in the Adversary Proceeding. *See FDIC of Maryland v. Morris* (*In re Morris*), 950 F.2d 1531, 1534 (11th Cir. 1992).

### *ii. Barton lacks Constitutional standing.*

14. "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Murthy v. Missouri*, 603 U.S. 43, 56 (2024). A case or controversy cannot exist without standing. *Id.* A seminal Supreme Court case on standing provides:

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561. *See also*, *Murthy*, 603 U.S. at 57 ("A proper case or controversy exists only when at least one plaintiff 'establish(es) that [she] has standing to sue'").

15. Barton cannot meet this burden. He has no concrete, particularized, actual, and imminent injury. It does not appear he even claims to have an injury in his own right. In his principal brief, Barton speaks in terms of injury to the Debtor.

*See* Dkt. No. 12, p. 5 ("Barton contested the enforceability and fairness of these settlements, believing they undervalued the [bankruptcy] estate's assets" and "argued that the settlements were detrimental to [the Debtor]'s estate"). As stated by the United States Supreme Court, "By particularized, we mean that the injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 561, n.l. "[A] party generally may not appeal a district court's order to champion the rights of another, and even 'an indirect financial stake in another party's claims is insufficient to create standing on appeal.'" *Rohm & Hass Texas, Inc. v. Ortiz Bros. Insulation, Inc., et al.*, 32 F.3d 205 (5th Cir. 1994).

16. Nor is it likely, but merely speculative, that a favorable decision in this appeal will redress Barton's hypothetical injury. Barton never appealed the Settlement Orders, and the deadline passed long ago. Barton's real grievance emanates from the court-approved Settlement, pursuant to which the Appellees agreed to submit the Agreed Judgment. But reversing the Agreed Judgment will not reverse the Bankruptcy Court's decision to approve the Settlement. That decision will stand because it was not appealed, so the Court cannot give Barton what he really seeks, to unwind the Settlement. Without redressability, there is no standing.

***iii. Barton lacks prudential standing required in bankruptcy appeals.***

17. Special prudential standing rules applicable in bankruptcy further limit Barton's appellate prospects. "In bankruptcy litigation, the mishmash of multiple

parties and multiple claims can render things labyrinthine, to say the least." *Furlough v. Cage (Matter of Technicool Systems, Inc.)*, 896 F.3d 382, 384 (5th Cir. 2018). "To dissuade umpteen appeals raising umpteen issues, courts impose a stringent-yet-prudent standing requirement: Only those directly, adversely, and financially impacted by a bankruptcy order may appeal it." *Id.*

18. "The narrow inquiry for bankruptcy standing—known as the 'person aggrieved' test—is 'more exacting' than the test for Article III standing." *Id.* at 385. The Fifth Circuit elaborated on the "person aggrieved" standard as follows:

> Rather than showing the customary fairly traceable causal connection, a bankruptcy appellant must instead show that he was directly and adversely affected pecuniarily by the order of the bankruptcy court. In essence, bankruptcy standing requires a higher causal nexus between act and injury. This restriction narrows the playing field, ensuring that only those with a direct, financial stake in a given order can appeal it. Thus in bankruptcy litigation, as in life, the more money we come across, the more problems we see."

*Id.* Barton cannot demonstrate that the Agreed Judgment "directly and adversely affected [him] pecuniarily" or otherwise, for the same reason the appellant in *Furlough v. Cage* could not.

19. In that case, Furlough, who owned debtor Technicool Systems, objected to the chapter 7 trustee's application to employ counsel. He claimed the firm had a conflict because they represented the largest creditor, NOV. He worried the firm would fail to disclose problems with NOV's claim, depriving him of the

opportunity as the debtor's owner to recover any surplus assets. *Id.* at 386. "Furlough's argument [was] essentially that if NOV's claim ceased to exist or dramatically decreased, the estate's assets would exceed its debt, and he would benefit financially." *Id.* Even if that were true "it would not be a direct result of [the] appeal." And "[t]his speculative prospect of harm [was] far from a direct, adverse, pecuniary hit." *Id.* As Judge Willett put it, "[t]he order must burden his pocket before he burdens a docket." *Id.*

20. The same goes for Barton here. The Agreed Judgment has not resulted and will not result in any direct, adverse, pecuniary hit to Barton. The Court should therefore dismiss his appeal.

**C. Agreed judgments, such as the judgment at issue here, generally are not appealable.**

21. Even if Barton had authority to cause BM318 to bring this appeal, and even if he had standing, "[a]ppeals cannot be taken from agreed judgments such as this one was, and, for that reason alone the appeal fails." *White & Yarborough v. Dailey*, 228 F.2d 836, 837 (5th Cir. 1955). The rule against appealing agreed or consent judgments applies nearly universally across the country, subject to varying exceptions. *See Swift & Co. v. U.S.*, 276 U.S. 311, 323-24 (1928) (subject to certain exceptions, a consent decree is always affirmed without considering the merits); *Verzilli v. Flexon, Inc.*, 295 F.3d 421, 424 (3d Cir. 2002) ("as a general rule, a party cannot appeal a consent judgment"); *New York ex rel. Vacco v. Operation Rescue*

*Nat'l*, 80 F.3d 64, 69 (2d Cir. 1996) ("Appeal from a consent judgment is generally unavailable on the ground that the parties are deemed to have waived any objections to matters within the scope of the judgment."); *Mock v. T.G.&Y. Stores Co.*, 971 F.2d 522, 526 (10th Cir. 1992) (it is "the well-accepted rule" that "an appeal ordinarily may not be taken from a consent judgment"); *Laczay v. Ross Adhesives, a Division of Conros Corp.*, 855 F.2d 351, 351 (6th Cir. 1988) ("As a general rule, neither party may appeal from an agreed judgment because it is not an involuntary adverse judgment."); *Cohen v. Virginia Elec. and Power Co.*, 788 F.2d 247, 249 (4th Cir. 1986) ("Had Cohen desired to preserve is right to appeal … he might have embodied that reservation in the judgment. Because he has not done so, we may not entertain his appeal from the consent judgment.").

22. None of the exceptions to the rule against appealing agreed judgments applies here. An exception lies, for example, where there was a lack of consent, lack of federal jurisdiction, a mistake, or fraud in obtaining consent. *Mock v. T.G.&Y. Stores*, 971 F.2d at 527 n.5 (citing *Swift & Co. v. U.S.*, 276 U.S. at 324). But none of the parties to the Agreed Judgment claims these things. Rather, they have all joined in this Motion to defend the Agreed Judgment. Another exception lies where the judgment expressly reserves the right to appeal, *see id.* at 527, though this exception may have limited application in the Fifth Circuit. *See Amstar Corp. v. Southern Pac. Transport Co. of Tex. and La.*, 607 F.2d 1100, 1100 (5th Cir. 1979)

("Although the consent judgment contained a recognition that the plaintiff wished to appeal the issue of the limitation of damages, the fact that both parties freely consented to the entry of a final judgment precludes appeal from it."). Even if it applies, the Agreed Judgment does not purport to preserve any appellate rights.

23. Similarly, an exception exists where the parties agree to a judgment in order to facilitate appellate review of a prior order. *Laczay v. Ross Adhesives*, 855 F.2d at 351 (quoting *Raceways Props., Inc. v. Emprise Corp.*, 613 F.2d 656, 657 (6th Cir. 1980), for the proposition that "There is an exception … when the appellants' 'solicitation of the formal dismissal was designed only to expedite review of [a prior] order which had in effect dismissed appellants' complaint.'"). But this exception does not apply either. As the Agreed Judgment itself recites, the parties entered into it in order to facilitate court-approved settlements and to dismiss all claims between them. It neither expressly nor implicitly contemplates further review.

24. Finally, an exception to the rule against appealing agreed judgments exists where the trial court lacked jurisdiction to enter the agreed judgment. *Mock v. T.G.&Y. Stores*, 971 F.2d at 527 n.5 (citing *Swift & Co. v. U.S.*, 276 U.S. at 324). Barton has suggested in his brief that the Bankruptcy Court lacked jurisdiction to enter the Agreed Judgment because he appealed the Ratification Order in the District Court. But he has never provided—and the Appellees have not found—any

compelling authority to support the proposition that appealing an order in one court can deprive another court of jurisdiction in a related matter. Indeed, the Fifth Circuit, in the underlying Receivership Case, suggests the opposite. *See Sec. & Exch. Comm'n v. Barton*, 79 F.4th 573, 579 (5th Cir. 2023) (citing *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 928 (5th Cir. 1983), for the proposition that, "'[t]his circuit follows the general rule that the filing of a valid notice of appeal from a final order of the district court divests that court of jurisdiction to act on the matters involved in the appeal, except to … enforce its judgment so long as the judgment has not been stayed or superseded.'")*; see also Russell v. Ingegneri*, 2016 WL 4379536, *3 (N.D. Al. 17, 2016) ("Filing an appeal divests a district court of jurisdiction over the case appealed, but it does not divest other federal courts of jurisdiction over other matters involving the party, even if the matters are factually related."); *U.S. v. Mendoza*, 290 F.Supp.2d 925, 930 (N.D. Cal. 2005) ("The fact that the government filed a notice of appeal in a separate, but related, case does not divest this Court of jurisdiction."). Since no exception applies, the Court should dismiss this impermissible appeal from an agreed judgment.

## IV. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Appellees respectfully request that the Court enter an order (1) dismissing this appeal with prejudice; and (2) granting them such other and further relief to which they are entitled.

RESPECTFULLY SUBMITTED this 3rd day of December, 2024.

By: /s/ *Deborah M. Perry*
Deborah M. Perry
Texas Bar No. 24002755
Julian P. Vasek
Texas Bar No. 24070790
**MUNSCH HARDT KOPF & HARR, P.C.**
500 N. Akard St., Ste. 4000
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: dperry@munsch.com
Email: jvasek@munsch.com

**ATTORNEYS FOR THE DIXON WATER FOUNDATION**

-and-

By: /s/ *C. Alan Carrillo*
Charlene C. Koonce
Texas Bar No. 11672850
charlene@brownfoxlaw.com
C. Alan Carrillo
Texas Bar No. 24109693
alan@brownfoxlaw.com
**BROWN FOX PLLC**
8111 Preston Road, Suite 300
Dallas, TX 75225
Tel. 214.327.5000
Fax. 214.327.5001

**ATTORNEYS FOR CORTNEY C. THOMAS, RECEIVER OF BM318, LLC**

-and-

By: /s/ *J. Robert Forshey*
J. Robert Forshey
Texas Bar No. 07264200
**FORSHEY & PROSTOK, LLP**
777 Main Street, Suite 1550
Fort Worth, Texas 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
Email: bforshey@forsheyprostok.com

By: /s/ *Joshua L. Shepherd*
Kimberly P. Harris
Texas Bar No. 24002234
Joshua L. Shepherd
Texas Bar No. 24058104
**QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, PC**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 871-2100
Facsimile: (214) 871-2111
Email: kharris@qslwm.com
Email: jshepherd@qslwm.com

**ATTORNEYS FOR LUMAR LAND & CATTLE, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 3rd day of December, 2024, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof, including on Timothy Barton through Kaitlyn Coker, Esq., counsel of record.

/s/ Deborah M. Perry
Deborah M. Perry

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this document complies with the length limits of Fed. R. Bankr. P. 8013(f)(3) because it contains 3,732 words, as measured by Microsoft Word.

/s/ Deborah M. Perry
Deborah M. Perry