_____

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

_____

TIMOTHY BARTON,

*Appellant,*

v.

CORTNEY C. THOMAS, RECEIVER, DIXON WATER
FOUNDATION, AND LUMAR LAND & CATTLE, LLC,

*Appellees.*

_____

**On Appeal from the United States Bankruptcy Court
For the Northern District of Texas, Fort Worth Division
Adversary No. 21-04051**

_____

## LUMAR LAND & CATTLE, LLC'S APPELLEE BRIEF

_____

J. Robert Forshey
State Bar No. 07264200
bforshey@forsheyprostok.com
Emily S. Chou
State Bar No. 24006997
echou@forsheyprostok.com
FORSHEY & PROSTOK, LLP
777 Main Street, Suite 1550
Fort Worth, Texas 76102
Tel: (817) 877-8855

## Corporate Disclosure Statement

Pursuant to Bankr. R. Pr. 8012(a), Lumar Land & Cattle, LLC ("Lumar") is a Texas limited liability company.  There is no parent corporation or any publicly held corporation that owns 10% or more of the membership interest in Lumar.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................(i)

TABLE OF CONTENTS ...........................................................................(ii)

TABLE OF AUTHORITIES ......................................................................(iv)

GLOSSARY OF DEFINED TERMS ..............................................................(ix)

I.    Statement Regarding Oral Argument ..............................................1

II.   Jurisdictional Statement ...........................................................2

III.  Issue Presented ....................................................................3

IV.   Statement of the Case:  Proceedings Below ......................................4

V.    Summary of Argument ..............................................................8

VI.   Arguments and Authorities ........................................................10

    A. Barton has no standing to appeal the Final Judgment.........................10

    B. Barton has failed to file a sufficient record to provide an adequate
    basis to evaluate his appeal........................................................12

    C.  The entry of the Final Judgment was a ministerial act to give effect to
    the settlement .......................................................................15

    D. Barton's appeal of the Ratification Order entered in the SEC Lawsuit
    did not (and could not) affect the Bankruptcy Court's exclusive *in rem*
    jurisdiction to enter the Final Judgment in the Adversary Proceeding ....16

    E.  The Ratification Order remained immediately effective and
    enforceable absent a stay pending appeal................................20

    F.  The Bankruptcy Court did not abuse its discretion in entering the
    Final Judgment .......................................................................21

G. There has been no violations of Barton's due process rights through the entry of the Final Judgment ................................................................22

H. This appeal is an improper collateral attack in the Settlement Orders ..............................................................................................................24

   i. A collateral attack is one in which the relief seeks relief which must in some fashion overrule a prior order or judgment ......................24

   ii.The Settlement Orders are entitled to full res judicata effect .............26

   iii. The res judicata effect of the Settlement Orders precludes any challenge by Barton to the Final Judgment...................................30

I. Barton's cases are inapposite and have no bearing on the present appeal...............................................................................................................31

VII.   Conclusion .......................................................................................................36

CERTIFICATE OF COMPLIANCE.......................................................................38

CERTIFICATE OF SERVICE ................................................................................39

# TABLE OF AUTHORITIES

## Federal Cases

*Adam v. Itech Oil Co. (In re Gibraltar Resources),* 210 F.3d 573
(5th Cir. 2000) ................................................................. 22, 26, 28-31, 35

*Allen v. McCurry*, 449 U.S. 90 (1980)..................................................30

*Bath Junkie Branson, LLC v. Bath Junkie, Inc.,* 528 F.3d 556
(8th Cir. 2008) .................................................................................15

*Big Picture Loans,* 2024 U.S. Dist. LEXIS 113315 .............................17, 19, 33, 34

*Brown v. Chesnut* (*In re Chesnut*), 356 F.2d Appx. 732
(5th Cir. 2006) (unpublished) ..........................................................26

*Cairns v. LSF6 Mercury Reo Invs. Trust Series 2008-1*, 2014 U.S. Dist.
LEXIS 177855 (W.D. Tex. 2014) .....................................................25

*Centr. Va. Comm. College v. Katz,* 546 U.S. 356 (2006) ........................................19

*Cmty. Comm. Bank v. O'Brien* (*In re O'Brien*), 312 F.3d 1135
(9th Cir. 2002) .................................................................................14

*Coinbase, Inc. v. Bielski,* 599 U.S. 736 (2023)......................................18

*Coleman v. Tollefson*, 575 U.S. 532 (2015)..........................................20

*Deering Milliken, Inc. v. F.T.C.*, 647 F.2d 1124 (D.C. Cir. 1978) ..........................21

*Field v. Henshaw* (*In re Henshaw*), 569 B.R. 800 (Bankr. Hawaii 2017)..............25

*Fortune Nat. Res. Corp. v. U.S. Dept. of Int.*, 806 F.3d 363
(5th Cir. 2015) .................................................................................12

*FW/PBS, Inc. v. Dallas*, 493 U.S. 215 (1990) .......................................12

*Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56
(1982)............................................................................. 17-20, 33

(iv)

*In re Apex Long Term Acute Care-Katy, L.P.,* 598 B.R. 314
    (Bankr. S.D. Tex. 2019) .................................................................25

*In re Cajun Power Coop., Inc.,* 119 F.3d 349 (5th Cir. 1997) ........................22, 29

*In re Copper Antitrust Litigation*, 436 F.3d 782 (7th Cir. 2006) ...........................21

*In re FBI Distribution Corp*., 267 B.R. 655 (1st Cir. BAP 2001) ..............19, 21, 34

*In re Grodsky*, 2014 U.S. Dist. LEXIS 143940 (E.D. La. 2014)............................27

*In re Imperial Tooling & Mfg..*, 314 B.R. 340
    (Bankr. N.D. Tex. 2004).................................................................27

*In re Markarian*, 228 B.R. 34 (1st Cir. BAP 1998)............................... 19, 21, 31-34

*In re Medomak Canning*, 922 F.2d 895 (1st Cir. 1990) .................................. 29-30

*In re Nutritional Sourcing Corp.*, 398 B.R. 816
    (Bankr. D. Del. 2008) ....................................................................35

*In re NFL Players Concussion Injury Litigation*, 2023 U.S. App.
    LEXIS 28582 (3rd Cir. March 31, 2023)(unpublished)...............................16

*In re Texaco, Inc.,* 84 B.R. 893 (Bankr. S.D.N.Y. 1988) .......................................35

*In re West Texas Marketing Corp*., 12 F.3d 497 (5th Cir. 1994) ..................... 29-30

*In re Woodson*, 839 F.2d 610 (9th Cir. 1989)........................................................27

*Jue v. Liu (In re Liu)*, 2020 Bankr. LEXIS 419 (B.A.P. 9th Cir.
    Feb. 11, 2020)..............................................................................20

*Karcher v. May*, 484 U.S. 72 (1987) ...................................................................10

*Kemp v. Birmingham News Co*., 608 F.2d 1049 (5th Cir. 1979)............................26

*Ki Chang Park v. Gebben* (*In re Ki Chang Park*), 2013 U.S. Dist.
    LEXIS 14150 (W.D. Wash. Feb. 1, 2013) ....................................................14

*Kuncl v. IBM*, 660 F. Supp. 2d 1246 (N.D. Ok. 2009). ..........................................25

*Kurz v. Mairone*, 1987 U.S. Dist. LEXIS 4514
    (E.D. Pa. May 29, 1987) ..........................................25

*LawL.C.* v. Creek, LLC (*In re Acquisitions*), 2024 U.S. App. 7134
    (5th Cir. March 26, 2024)(unpublished)..........................................11, 12, 14

*Lowery v. U.S.*, 258 F.2d 194 (9th Cir. 1958)..........................................14

*Maness v. Myers,* 419 U.S. 449 (1975)..........................................21

*Marino v. Ortiz*, 484 U.S. 301 (1988)..........................................10

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ..........................................23, 34

*Milden v. Joseph (In re Milden),* 1997 U.S. App. LEXIS 7726
    (9th Cir. 1997)(unpublished) ..........................................27

*Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358
    (5th Cir. 1972) ..........................................25, 27

*Minnesota v. Kalman W. Abrams Metals, Inc.* 155 F.3d 1019
    (8th Cir. 1998) ..........................................15

*Mitchell v. Village Creek Drainage Dist. 8*, 158 F.2d 475
    (8th Cir. 1946) ..........................................25

*NAACP v. Tindall*, 95 F.4th 212 (5th Cir. 2024) ..........................................24

*Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556 (5th Cir. 1983)
    (en banc) ..........................................26, 31

*Official Comm. of Unsecured Creditors v. Bechtle* (*In re Labrum &*
    *Doak, LLP*), 237 B.R. 275 (Bankr. E.D. Pa. 1999) ..........................................22, 25

*Ries v. Page*, 610 F.3d 865 (5th Cir. 2010) ..........................................26

*Rohm & Haas Texas Inc. v. Ortiz Bros. Insulation*, 32 F.3d 205
    (5th Cir. 1994) ..........................................11, 12

(vi)

*Scottsdale Ins. Co. v. Knox Park Constr. Inc.*,
488 F.3d 680 (2007) .......................................................11

*Smith v. Terry*, 620 F. Supp. 551 (W.D. Tex. 2022)...........................11, 14

*Taylor Brands, LLC v. GB II Corp*., 627 F.3d 874
(Fed. Cir. 2010).........................................................16

*U.S. ex. rel. Eisenstein v. City of New York*, 556 U.S. 928
(2009).............................................................10, 11, 14

*U.S. Slovacek*, 699 F.3d 423 (5th Cir. 2012) ...........................................10

*U.S. v. Nozik*, 1998 U.S. App. LEXIS 14704
(6th Cir. June 25, 1998) (unpublished).........................................10

*U.S. v. Sihner*, 697 F.2d Appx. 510 (9th Cir. 2017)(unpublished) .........................14

*Zer-Han v. Frankford (In re CPDC, Inc.)*, 221 F.3d 693
(5th Cir. 2000) ........................................................13

## Federal Statutes

11 U.S.C., Section 542 .......................................................17

11 U.S.C., Section 547 .......................................................4

11 U.S.C., Section 548 .......................................................4

28 U.S.C., Section 1334(a) .......................................................2

28 U.S.C., Section 1334(e) .......................................................2, 18-19, 27

28 U.S.C., Section 157(b)(2)(A), and (O) .......................................................27

28 U.S.C., Section 157(b)(2)(A), (F), (H) and (O) .......................................................2

28 U.S.C., Section 158.......................................................26, 29

28 U.S.C., Section 158(a)(1).......................................................2

## Federal Rules

Fed. R. Bankr. P. Pr. 8002(a)(1) ..................................................................7

Fed. R. Bankr. R. Pr. 8009(a)(1) ...............................................................13

Fed. R. Bankr. R. Pr. 8009(a)(1)(A)..........................................................13

Fed. R. Bankr. R. Pr. 8009(a)(1)(B)..........................................................13

Fed. R. Bankr. R. Pr. 8009(a)(2) ...............................................................13

Fed. R. Bankr. R. Pr. 8012(a) .....................................................................(i)

Fed. R. Bankr. R. Pr. 8014(a)(4)..................................................................2

Fed. R. Bankr. R. Pr. 9019.....................................................6, 22, 27, 35

# Glossary of Defined Terms

Defined terms in this Brief was listed below along with the page on which each such defined term originated:

| Term | Page |
|:---:|:---:|
| Lumar | (i) |
| Barton | 1 |
| Mini Record | 1 |
| Final Judgment | 3 |
| Adversary Proceeding | 3 |
| BM318 | 3 |
| Original Foundation Tract | 4 |
| Foundation | 4 |
| Avoidance Actions | 4 |
| Lis Pendens | 4 |
| Lumar Land | 5 |
| SEC Lawsuit | 5 |
| Receiver | 5 |
| Receiver Order | 5 |
| Settlement Agreement | 5 |
| Settlement Motions | 6 |
| Settlement Orders | 6 |
| Ratification Order | 7 |

# I.    Statement Regarding Oral Argument

1.    There is no need for oral argument.  The appellant, Timothy Barton ("Barton"), has a long history of delay in these matters.  The issue here is straightforward, and the merits of this appeal are so limited as to be fatuous.  There is no reason to delay resolution of this appeal through unnecessary oral argument relating to a meritless appeal.

# II.    Statement Regarding the Record

2.    Barton failed to properly designate the record for this appeal as required by Bankr. R. Pr. 8009(1).  Consequently, the record here (the "Mini-Record") is limited to 137 pages consisting of the following:

   a)    Barton's Notice of Appeal [Adv. Dkt. No. 144];

   b)    Barton's Amended Notice of Appeal [Adv. Dkt. No. 147];

   c)    The Docket Sheet for Adversary Proceeding 21-04051; and

   d)    The Docket Sheet for the main bankruptcy case no. 20-42789.

3.    As explained below, it was Barton's burden, as the appellant, to designate an appropriate record to support his appeal.  However, in effect, the Mini-Record consists only of multiple copies of the Agreed Final Judgment which is the subject of this appeal.  References to the Mini-Record are reflected below as (MR. _____).  Lumar identifies matters which were not included in the Mini-

Record by the docket number in the main bankruptcy case or the Adversary

Proceeding.

### III.   <u>**Jurisdictional Statement**</u>

4.      Pursuant to Bankr. R. Pr. 8014(a)(4), Lumar makes the following

jurisdictional statement:

a)      The Bankruptcy Court had original jurisdiction over the bankruptcy

case pursuant to 28 U.S.C., section 1334(a).  The Bankruptcy Court also had

exclusive jurisdiction over all property of the bankruptcy estate pursuant to 28

U.S.C., section 1334(e).  This included the avoidance actions pursuant to Chapter 5

of Title 11 which were the basis of the settlement which is the subject of this

appeal.  The Chapter 5 avoidance actions which were the subject of the settlement

at issue in this appeal were subject to the Bankruptcy Court's "core" jurisdiction

pursuant to 28 U.S.C., section 157(b)(2)(A), (F), (H), and (O).  The orders

approving the settlement were also an exercise of the Bankruptcy Court's core

jurisdiction pursuant to 28 U.S.C., sections 157(b)(2)(A), (F), (H), and (O).  Lumar

does not believe that there is any challenge to the Bankruptcy Court's jurisdiction

in relation to the matters which form the basis of this appeal.

b)      If Barton had appellate standing, this Court would have jurisdiction

over this appeal pursuant to 28 U.S.C., section 158(a)(1).  However, because

Barton lacks appellate standing, this Court's appellate jurisdiction has not been

properly invoked, and the appeal should be dismissed. Lumar and The Dixon Water Foundation have filed a joint motion to dismiss this appeal for lack of appellate standing. This Brief is filed subject to such motion to dismiss.

c) This appeal relates to the entry of a *Final Agreed Judgment* [Adv. Dkt. No. 142]("Final Judgment") entered on August 26, 2024, in Adversary Proceeding no. 21-04051 ("Adversary Proceeding") pending before the Bankruptcy Court. Barton filed a timely *Notice of Appeal* [Adv. Dkt. No. 144] on September 6, 2024, relating to the Final Judgment.

d) The Final Judgment is final and subject to appeal.

## IV. Issue Presented

5. The issue in this appeal is whether the Bankruptcy Court erred in entering the Final Judgment as a ministerial act authorized and contemplated in the final orders approving a settlement (defined below as the Settlement Orders) of the Avoidance Actions asserted by the debtor, BM318, LLC ("BM318"). The Settlement Orders are the operative orders approving the settlement, and specifically contemplate the entry of the Final Judgment to effectuate the settlement. Because the Settlement Orders had become final, and were not appealed by Barton, there could be no error in entering the Final Judgment as a ministerial act to give effect to the settlement approved in these final orders. Barton's argument that the Bankruptcy Court exceeded its jurisdiction or abused its

discretion in entering the Final Judgment, or that he was deprived of due process, are frivolous.

## V.     Statement of the Case: Proceedings Below

6.     The Adversary Proceeding related to a tract of land ("Original Foundation Tract") consisting of approximately 2,055 acres located in Parker County, Texas, originally owned by The Dixon Water Foundation ("Foundation"), which is the other appellee in this appeal.  The Foundation sold the land to BM318 through an owner financed transaction.  BM318 defaulted in the payment of the debt, and the remaining portion of the Original Foundation Tract still owned by BM318 was re-conveyed by BM318 to the Foundation through a deed in lieu of foreclosure recorded on July 1, 2020 (Doc. no. 152, Exhibit 18, pp. 2-6).

7.     On September 1, 2020, BM318 commenced the bankruptcy case (MR. 122).  A plan of reorganization was confirmed pursuant to a confirmation order entered on August 2, 2021 (MR. 130).

8.     Shortly thereafter, on August 10, 2021, BM318 commenced the Adversary Proceeding against the Foundation (MR. 108) asserting claims (collectively, the "Avoidance Actions") to avoid the deed in lieu of foreclosure delivered by BM318 to the Foundation as a preference pursuant to section 547 of the Bankruptcy Code or as a fraudulent transfer pursuant to section 548 (Adv. Doc. No. 1).  Eventually, BM318 filed a notice of lis pendens ("Lis Pendens") relating to

the Adversary Proceeding in the real property records of Parker County, Texas (MR. 19-22).

9. After the bankruptcy case was filed, on April 23, 2021, the Foundation conveyed a 204-acre tract ("Lumar Land") out of the Original Foundation Tract to Lumar (Doc. No. 152, Exhibit 4). The Lis Pendens also burdened the Lumar Tract. When Lumar learned about the Lis Pendens, it sought and was granted leave to intervene in the Adversary Proceeding to protect its interests in the Lumar Land.

10. Meanwhile, the Securities Exchange Commission (SEC) had commenced a lawsuit ("SEC Lawsuit")[1] against Barton before the U.S. District Court in the Dallas Division. Ultimately, Cortney Thomas was appointed as the receiver ("Receiver") over Barton's assets pursuant to an *Order Appointing Receiver* ("Receiver Order") entered in the SEC Lawsuit on November 29, 2023 (MR. 28-54). One of the Receivership Entities expressly made subject to the Receiver's control under the Receivership Order was BM318 (M.R. 31). Barton has appealed the Receiver Order [SEC Lawsuit ECF no. 429] but has not obtained a stay pending appeal.

11. The Receiver entered into separate settlement agreements (collectively, the "Settlement Agreements" and each a "Settlement Agreement")

---

[1] *Securities and Exchange Commission v. Timothy Lynch Barton, et al.*, Case No. 3:22-cv-2118-x in the United States District Court for the Northern District of Texas, Dallas division.

with Lumar and the Foundation settling the Avoidance Actions. The Receiver then

filed separate motions (collectively, "<u>Settlement Motions</u>") in the main bankruptcy

case pursuant to Bankr. R. Pr. 9019 to approve the respective Settlement

Agreements with Lumar and the Foundation (MR. 134, Doc. Nos. 147 and 149). A

hearing was held before the Bankruptcy Court on May 20, 2024 to consider the

Settlement Motions. Although Barton had not filed a formal written objection to

the Settlement Motions, he appeared at the hearing through counsel and objected to

the approval of the settlements. A full evidentiary hearing was then held on the

Settlement Motions (MR. 135-36 (docket entries)). While Barton's counsel made

arguments on the record, Barton introduced no evidence in support of his

objection. Thereafter, the Bankruptcy Court made detailed findings of fact and

conclusions of law overruling Barton's objection and granting the Settlement

Motions (MR. 135 (docket entries)). The actual findings are not a part of the Mini-

Record.

12.     The Bankruptcy Court then entered two separate orders (collectively,

the "<u>Settlement Orders</u>") respectively approving the Settlement Agreements among

BM318 and Lumar (MR. 136, Doc. No. 163) and BM318 and the Foundation (MR.

136, Doc no. 164).  Barton did not appeal either of the Settlement Orders which have become final for all purposes.[2]

13.    The Settlement Agreements both provided that, after the settlement was approved by the Bankruptcy Court, the Settlement Agreements must then be ratified by the District Court as a part of the SEC Lawsuit (Doc. No. 152, Exhibit 1, pp. 12-13).  On August 14, 2024, the District Court entered an *Order Regarding the BM318, LLC's Settlement Agreements with the Dixon Water Foundation and Lumar Land & Cattle, LLC* [SEC Lawsuit ECF no. 550] ("Ratification Order") ratifying the settlement as approved by the Bankruptcy Court in the Settlement Orders.

14.    On August 24, 2024, Barton filed a *Notice of Appeal* [SEC Lawsuit, ECF no. 554] relating to the Ratification Order.  This appeal is still pending. Barton neither sought nor obtained a stay pending appeal as to the Ratification Order.

15.    On August 26, 2024, the Bankruptcy Court entered the Final Judgment (MR. 7-28) as an agreed judgment approved for entry by all three parties to the Adversary Proceeding:  BM318, Lumar, and the Foundation.

16.    On September 6, 2024, even though the Settlement Orders had

---

[2]  The Settlement Orders were entered on May 28, 2024.  Pursuant to Bankr. R. Pr. 8002(a)(1), any notice of appeal as to these orders had to be filed within 14 days after their entry.  Consequently, the Settlement Orders have long since become final for all purposes.

become final, Barton filed his *Notice of Appeal* (MR. 3-6) appealing the entry of the Final Judgment. Barton has neither sought nor obtained a stay pending appeal of the Final Judgment.

## VI.    Summary of Argument

17.    Lumar and the Foundation have filed a Joint Motion to Dismiss Appeal ("Motion to Dismiss") asserting that this appeal should be dismissed because Barton does not have appellate standing. This Brief is filed subject to the Motion to Dismiss.

18.    Barton's basic argument is that, through some mysterious mechanism, the appeal of the Ratification Order entered in the SEC Lawsuit divested the Bankruptcy Court from jurisdiction through the Adversary Proceeding to enter the Final Judgment giving effect to the already final Settlement Orders approving the Settlement Agreements. Barton also asserts, alternatively, that entering the Final Judgment was an abuse of discretion and violated his rights to due process. These arguments are all frivolous and fail for multiple reasons:

a)    As a non-party to the Adversary Proceeding, Barton lacks standing to appeal the Final Judgment. Barton has failed to provide a record which demonstrates that he has appellate standing.

b)    The Final Judgment was entered by the Bankruptcy Court as a ministerial act to give effect to the settlement approved in the Settlement Orders.

8

Barton never explains by what mechanism his appeal of the Ratification Order in a separate lawsuit pending before another federal court divested the Bankruptcy Court of its exclusive *in rem* jurisdiction to give effect to the final Settlement Orders by entering the Final Judgment.

      c)      The Ratification Order was not deprived of its vitality and enforceability by Barton's appeal. Instead, if Barton wanted to put the Ratification Order on hold while he appealed, he was required to obtain a stay pending appeal. Because Barton did not obtain a stay pending appeal, the Ratification Order remained effective and enforceable according to its terms.

      d)      The entry of the Final Judgment in accordance with the Settlement Orders was a ministerial act to give effect to the settlement. As such, this was not an abuse of discretion and in no way even arguably deprived Barton of his right to due process.

      e)      Barton failed to appeal the Settlement Orders which have both become final. The Final Judgment was entered as a ministerial act to give effect to the settlement approved in the Settlement Orders. Barton's appeal of the Final Judgment is nothing more than an improper collateral attack on the Settlement Orders which specifically contemplate the entry of the Final Judgment to implement the settlement.

f)    The cases cited by Barton are inapposite and have no applicability to the relevant issues in this appeal.

## VII.    <u>Arguments and Authorities</u>

**A. Barton has no standing to appeal the Final Judgment.**[3]

19.    Barton was not a party to the Adversary Proceeding.  The Final Judgment was approved for entry by all three parties to the Adversary Proceeding. "The rule that only parties to the lawsuit, or those who properly become parties, may appeal an adverse judgment is well settled."[4]  This rule applies equally to a consent judgment.[5]  If a non-party wants to appeal, the better practice is for the non-party to seek intervention into the lawsuit for purposes of an appeal.[6]  The U.S. Supreme Court has defined a "party" to litigation as one by or against whom a lawsuit is brought.[7]  A person may become a party by intervening in the lawsuit.[8] Barton was not a party to the Adversary Proceeding within the scope of this definition and he has not intervened.  Thus, he was not a party to the Adversary

---

[3]  This argument is made consistent with and subject to the Motion to Dismiss.

[4]  *Marino v. Ortiz*, 484 U.S. 301, 304 (1988); accord *Karcher v. May*, 484 U.S. 72, 77 (1987)("But we have consistently applied the general rule that one who is not a party or has not been treated as a party to a judgment has no right to appeal therefrom").

[5]  *Marino*, 484 U.S. at 304;  *U.S. v. Nozik*, 1998 U.S. App. LEXIS 14704 *8 (6th Cir. June 25, 1998)(unpublished)("Only parties to a lawsuit have standing to appeal.  In order for a party to challenge a consent decree, he must intervene").

[6]  *U.S. Slovacek*, 699 F.3d 423, 426-27 (5th Cir. 2012), citing *Marino*, 484 U.S. at 304.  Accord, *U.S. v. Nozik*, 1998 U.S. App. LEXIS 14704 *8.

[7]  *U.S. ex. rel. Eisenstein v. City of New York*, 556 U.S. 928, 932-33 (2009).

[8]  *Id.*

Proceeding with no standing to appeal the Final Judgment.

20.    Likewise, Barton has no capacity to appeal the Final Judgment on behalf of BM318. The Receiver Order places the Receiver in sole control of BM318 and prohibits Barton from acting on behalf of the entity (MR. 33-34). The Receiver acted on behalf of BM318 in all matters relating to the Settlement Motions and the settlement. In his objection to the approval of the settlement, Barton never contested the Receiver's right to act on behalf of BM318, likely because the Receiver Order conclusively negates any ability by Barton to act on behalf of BM318. The power to act on behalf of BM318 is exclusively reserved to the Receiver.

21.    The Fifth Circuit has adopted the rule that, "[A] party may not appeal a district court's order to champion the rights of another, and even 'an indirect financial stake in another party's claims is insufficient to create standing to appeal.'"[9] This remains the settled law.[10] In a recent *LawL.C.* opinion, the Fifth Circuit found that Barton lacked appellate standing to appeal another settlement approved by the district court, and suggested that, in view of the U.S. Supreme Court's opinion in *City of New York*, 556 U.S. at 933, a non-party lacks appellate

---

[9]  *Rohm & Haas, Texas, Inc. v. Ortiz Bros. Insulation*, 32 F.3d 205, 208 (5th Cir. 1994); accord, *Scottsdale Ins. Co. v. Knox Park Construction, Inc.*, 488 F.3d 680, 683 (2007).

[10]  *Smith v. Terry*, 620 F. Supp. 551, 555 (W.D. Tex. 2022), citing *Rohm & Haas*, 32 F.3d at 208.

standing.[11]  In that case,[12] Barton also failed to provide an appropriate record to support any appellate standing by him.[13]  As a consequence, the Fifth Circuit found that he had failed to demonstrate any appellate standing.  This is also the case here: Barton has failed to provide any record to the Court to which supports the existence of appellate standing.

22.     Barton, as the putative appellant, has the burden of demonstrating that he is a proper party to appeal.[14]  Appellate standing must affirmatively appear from the record,[15] and the party asserting appellate standing has the burden to establish this standing.[16]  The Mini-Record provided by Barton is inadequate to satisfy Barton's burden to establish appellate standing to appeal the Final Judgment as a non-party.  However, the result with a full record would be no different.  Barton cannot demonstrate appellate standing to appeal the Final Judgment.

**B.      Barton has failed to file a sufficient record to provide an adequate basis to evaluate his appeal**.

23.     The burden is on Barton, as the appellant, to designate a record sufficient to allow the appellate court to make an educated assessment of the merits

---

[11]  *LawL.C.* v. *Creek, LLC* (*In re Acquisitions*), 2024 U.S. App. 7134 *4 (5th Cir. March 26, 2024)(unpublished).

[12]  *Id.*

[13]  *Id.*

[14]  *Fortune Nat. Res. Corp. v. U.S. Dept. of Int*., 806 F.3d 363, 366 (5th Cir. 2015), citing *Rohm v. Haas*, 32 F.3d at 208.

[15]  *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990) (Appellate standing must affirmatively appear in the record).

[16]  *Id.*

of the appeal, including demonstrating that Barton has appellate standing. Here, the Mini-Record is so sparse that it fails to provide any reasonable basis to grant the appeal. This includes any basis to establish that Barton has appellate standing.

24. Pursuant to Bankr. R. Pr. 8009(a)(1), Barton was required to file his designation of the record.[17] Barton, however, failed to timely file a designation of record, and only did so on an untimely basis.[18] Because Barton failed to timely designate the record to support an appeal, the Bankruptcy Clerk forwarded a Mini-Record [ECF 3-1] which consists of multiple copies of the Final Judgment.[19]

25. As the Fifth Circuit noted, "[T]he purpose of the record designation requirement is to provide the reviewing court with an adequate basis for evaluating the appellant's claims on appeal. The burden of creating an adequate record rests with the appellant, who may not urge an issue on appeal if he has failed to provide the appellate court with the requisite record."[20] The appellant has the burden to

---

[17] Bankr. R. Pr. 8009(a)(1)(A) provides, "The appellant must file with the bankruptcy clerk and serve on the appellee a designation of items to be included in the record…"

[18] Bankr. R. Pr. 8009(a)(1)(B) requires the appellant to filed and serve the designation of the record within 14 days after the notice of appeal was filed. Barton's notice of appeal (Adv. Docket No. 144) was filed on September 6, 2024. However, his designation of the record (Adv. Docket No. 158) was not filed until October 1, 2024, and was untimely under the rule.

[19] Under Rule 8009(a)(2) ties the appellee's time frame to designate additional items in the record to the date on which the appellant filed its designation of the record. Appellees, like Lumar and the Foundation, are required to file and serve their designation of additional items within 14 days after being served with the appellant's designation. Here, Lumar (Adv. Docket No. 161), the Foundation (Adv. Docket No. 162) and the BM318 Receiver (Adv. Docket No. 160) all filed responsive designations on a timely basis on October 15, 2024. However, the Bankruptcy Clerk, consistent with local procedure, has not transmitted the record untimely designated by Barton.

[20] *Zer-Han v. Frankford* (*In re CPDC, Inc.*), 221 F.3d 693, 698 (5th Cir. 2000).

provide a complete record on the appeal.[21]  Where the appellant fails to provide a

sufficient record to allow the appellate court to make a meaningful review of the

merits of the appeal, the appellate court may summarily deny the appeal.[22]  "[T]he

failure to present a sufficient record can itself serve as a basis for summary

affirmance."[23]  As another case noted, if the appellant provides "an insufficient

record to review the issue," the order under appeal may be summarily affirmed.[24]

      26.    As noted above, a recent unpublished Fifth Circuit opinion applied

this rule to another frivolous appeal by Barton.[25]  Similar to this case, Barton

attempted to appeal from a settlement approved by the district court.  Concluding

that Barton lacked appellate standing, the Fifth Circuit noted that because Barton

failed to provide a complete record, the court had no way to assess Barton's alleged

equities to support appellate standing.[26]  However, the opinion also suggests that,

in view of the U.S. Supreme Court's *City of New York* opinion, a non-party may

not be entitled to appeal without intervening in the lawsuit,[27]something Barton

---

[21] *Smith v. Terry* (*In re Salubrio, LLC*), 2022 U.S. Dist. LEXIS 35388 *4 (W.D. Tex. March 1, 2022), citing *CPDC, Inc.*, 221 F.3d at 698.

[22] *Ki Chang Park v. Gebben* (*In re Ki Chang Park*), 2013 U.S. Dist. LEXIS 14150 *10 (W.D. Wash. Feb. 1, 2013)("Failure by an appellant to designate a record sufficient to enable a meaningful appellate review of the ruling below can serve as a basis for dismissal of the appeal (citation omitted), or for a summary affirmance of the ruling"),

[23] *Cmty. Comm. Bank v. O'Brien* (*In re O'Brien*), 312 F.3d 1135, 1137 (9th Cir. 2002).

[24] *Lowery v. U.S.*, 258 F.2d 194, 196 (9th Cir. 1958); accord, *U.S. v. Sihner*, 697 F.2d Appx. 510, 511 (9th Cir. 2017)(unpublished).

[25] *LawL.C. v. Creek, LLC* (*In re Acquisitions*), 2024 U.S. App. LEXIS 7134 *4 (5th Cir. March 26, 2024)(unpublished).

[26] *Id.*

[27] *Id.*

failed to do.

27. As noted above, Barton has the burden to demonstrate appellate standing. The limited Mini-Record is wholly inadequate to demonstrate that Barton has any appellate standing as a non-party to appeal. However, the result would be the same even on a full record. Barton lacks appellate standing, and this appeal should be summarily denied on that basis.

## C. The entry of the Final Judgment was a ministerial act to give effect to the settlement.

28. The operative orders approving the settlement were the Settlement Orders. The entry of the Final Judgment was a ministerial act to effectuate the Settlement Orders. If Barton desired to dispute the Bankruptcy Court's approval of the settlement on appeal, he had to appeal the two Settlement Orders, both of which have long since become final. Barton's arguments relating to the appeal of the Ratification Order through the SEC Lawsuit are nothing more than a thinly disguised attempt to circumvent his failure to appeal the two Settlement Orders through a collateral attack on these orders.

29. Once the Bankruptcy Court had approved the settlement through the entry of the Settlement Orders, the entry of the Final Judgment was ministerial in nature to give effect to the settlement[28] approved in the already final Settlement

---

[28] *Minnesota v. Kalman W. Abrams Metals, Inc.*, 155 F3d 1019, 1023 (8th Cir. 1998)(Entry of final consent decree approving a previously approved settlement was a ministerial task); *Bath Junkie Branson, LLC v. Bath Junkie, Inc.*,

Orders.[29]  There was no error by the Bankruptcy Court in undertaking the ministerial function of entering the Final Judgment to give effect to already final Settlement Orders.

**D.     Barton's appeal of the Ratification Order entered in the SEC Lawsuit did not (and could not) affect the Bankruptcy Court's exclusive *in rem* jurisdiction to enter the Final Judgment in the Adversary Proceeding.**

30.     Barton argues that, through some mystic mechanism, the appeal of the Ratification Order entered in the SEC Lawsuit divested the Bankruptcy Court of jurisdiction to enter the Final Judgment as a part of the bankruptcy case.  Barton argues that by appealing the Ratification Order and thus "challenging the validity and enforceability" of the settlement, he placed the agreement squarely within the jurisdiction of the appellate court, presumably meaning this Court.  Barton Brief, p.15.  This argument is so completely without merit as to be fatuous.  If Barton wanted to challenge the settlement, he had to timely appeal the Settlement Orders. The entry of the Final Judgment was a ministerial act to implement the two final Settlement Orders.  Barton's appeal of an order in the SEC Lawsuit did not (and in fact could not) divest the Bankruptcy Court of its exclusive *in rem* jurisdiction over either the Avoidance Actions or the Settlement Orders, or its authority to perform

528 F.3d 556, 561 n.z. (8th Cir. 2008)(After court entered an order indicating the intent to enforce a settlement agreement, the only remaining task, entering a judgment, was ministerial").

[29]  *In re NFL Players Concussion Injury Litigation*, 2023 U.S. App. LEXIS 28582 *20 (3rd Cir. March 31, 2023)(unpublished)(An order entered to effectuate a prior order is ministerial); *Taylor Brands, LLC v. GB II Corp.*, 627 F3d 874, 878 (Fed. Cir. 2010)(After court had entered a summary judgment, stipulating to the form of the final judgment to effectuate the summary judgment was a ministerial act).

the ministerial act of entering the Final Judgment to give effect to the already final Settlement Orders.

31.     Barton's argument is an incorrect application of the *Griggs* principle that the filing of a notice of appeal divests the trial court of control "over the aspects of the case subject to appeal."[30]  The *Griggs* principle applies to proceedings before the trial court whose order or judgment is the subject of the appeal.  Here, that is the District Court before whom the SEC Lawsuit is pending. It does not apply to matters pending in another federal court, like the Bankruptcy Court, especially given the fact that, in entering the Final Judgment, the Bankruptcy Court was exercising its exclusive *in rem* jurisdiction over the Avoidance Actions and the settlement.  Barton's argument improperly conflates the SEC Lawsuit (pending before the District Court in Dallas) and the completely separate Adversary Proceeding pending before the Bankruptcy Court.

32.     This Court has applied the *Griggs* principle in a similar context in a recent opinion in *Big Picture Loans, LLC v. Eventide Credit Acquisitions, LLC*.[31] There, the debtor had brought an adversary proceeding against Big Picture for turnover relief pursuant to section 542.  Big Picture then filed a motion to compel arbitration.  When that motion was denied, Big Picture appealed the order and

---

[30] *Griggs v. Provident Consumer Discount Co*., 459 U.S. 56, 58 (1982).

[31] 2024 U.S. Dist. LEXIS 113315 (N.D. Tex. June 27, 2024).

obtained an automatic stay pending appeal based on the U.S. Supreme Court's *Coinbase* opinion.[32]  Independent of the turnover adversary proceeding, the debtor had also filed a motion in the main bankruptcy case to enforce the automatic stay against Big Picture.  Based on the stay order entered in the turnover adversary proceeding, an issue arose whether the applicability of the stay (based on the *Griggs* principle) was limited to the adversary proceeding (in which the order subject to appeal had been entered) or applied to the entire bankruptcy case, including the motion to enforce the stay pending in the main bankruptcy case.

33.    Applying the *Griggs* principle, this Court concluded that the stay extended only to the adversary proceeding which was the subject of the appeal.[33] The Bankruptcy Court had exclusive *in rem* jurisdiction over all property of the bankruptcy estate.[34]  Extending the stay applicable to the adversary proceeding to other matters pending before the Bankruptcy Court in the main case interfered with the bankruptcy court's exclusive *in rem* jurisdiction over the property of the estate.[35]  Consequently, the *Griggs* principle only applied to the adversary proceeding in which the order subject to appeal had been entered, and did not

---

[32] *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023).

[33] *Id*. at *5.

[34] *Id.* at *6 citing 28 U.S.C., section 1334(e).

[35] *Id*. at *7-*9.

apply to matters outside the adversary proceeding, including the motion to enforce the automatic stay pending in the main bankruptcy case.

34.     The same reasoning applies here.  Section 1334(e) grants the Bankruptcy Court exclusive jurisdiction over the property of BM318's bankruptcy estate.  This bankruptcy jurisdiction is, at its core, *in rem*.[36]  In entering both the Settlement Orders and the Final Judgment, the Bankruptcy Court was exercising this exclusive *in rem* jurisdiction over the Avoidance Actions and the settlement approved in the Settlement Orders.  Applying the *Big Picture Loans* opinion, Barton's appeal of the Ratification Order in the SEC Lawsuit had no impact on this exclusive *in rem* jurisdiction exercised through the bankruptcy case.  As a consequence, Barton's appeal of the Ratification Order through the SEC Lawsuit did not, and indeed could not, divest the Bankruptcy Court of its exclusive *in rem* jurisdiction through the bankruptcy case over both the Avoidance Actions and the settlement of these claims.

35.     Barton cites only two cases in support of the proposition that the appeal of the Ratification Order divested the Bankruptcy Court of jurisdiction:  *In re FBI Distribution Corp*., 267 B.R. 655, 656 (1st Cir. BAP 2001), and *In re Markarian*, 228 B.R. 34, 47 (1st Cir. BAP 1998).  Both cases address the *Griggs* principle as it applies to the adversary proceeding in which the judgment which is

---

[36] *Centr. Va. Comm. College v. Katz,* 546 U.S. 356 (2006) (Bankruptcy jurisdiction, at its core, is *in rem*").

the subject of the appeal was entered. Neither case suggests that the appeal of the Ratification Order in the SEC Lawsuit divested the Bankruptcy Court acting through the bankruptcy case of its exclusive *in rem* jurisdiction over the Avoidance Actions or the settlement to resolve them. This argument also ignores the obvious problem that, under the *Griggs* principle, the appeal of the Ratification Order did not impact its enforceability because Barton did not obtain a stay pending appeal.

**E.     The Ratification Order remained immediately effective and enforceable absent a stay pending appeal**.

36.     Barton's arguments tacitly assume that his appeal somehow rendered the Ratification Order ineffective so as to prevent the entry of the Final Judgment by the Bankruptcy Court. However, it is well established that the pendency of an appeal does not affect the enforceability of an order or judgment entered by a federal court:

a)     "Even when subject to a pending appeal, federal judgments and orders are immediately effective and enforceable absent a stay pending appeal."[37]

b)     "Unless a court issues a stay, a trial court's judgment (say, dismissing a case) normally takes effect despite a pending appeal;"[38]

c)     "The vitality of [a district court's] judgment is undiminished by pendency of the appeal. Unless a stay is granted either by the court rendering the

---

[37] *Jue v. Liu* (*In re Liu*), 2020 Bankr. LEXIS 419 *10 (B.A.P. 9th Cir. Feb. 11, 2020).

[38] *Coleman v. Tollefson*, 575 U.S. 532, 539 (2015).

judgment or the court to which the appeal is taken, the judgment remains operative;"[39]

d) "The general rule is that the judgment of a district court becomes effective and enforceable as soon as it is entered; there is no suspended effect pending appeal unless a stay is entered;[40]

e) "If a person to whom a court directs an order believes that the order is incorrect, the remedy is to appeal, but, absent a stay, he must promptly comply with the order pending appeal."[41]

37. Barton cites no authority to contradict the black letter law above. Neither of the cases cited by Barton at page 15 of his Brief (*FBI Distribution*, 267 B.R. 655, or *Markarian*, 228 B.R. 34) suggest that Barton's appeal rendered the Ratification Order ineffective. Barton never explains the mechanism by which his appeal of the Ratification Order in the SEC Lawsuit, without a stay pending appeal, in any manner rendered the Ratification Order ineffective. There was no error by the Bankruptcy Court in giving effect to the unstayed Ratification Order and the already final Settlement Orders by entering the Final Judgment.

**F.     The Bankruptcy Court did not abuse its discretion in entering the Final Judgment.**

---

[39] *Deering Milliken, Inc. v. F.T.C.*, 647 F.2d 1124, 1129 n.11 (D. C. Cir. 1978).

[40] *In re Copper Antitrust Litigation*, 436 F.3d 782, 793 (7th Cir. 2006).

[41] *Maness v. Myers*, 419 U.S. 449, 458 (1975).

38.     Orders approving settlements under Bankr. R. Pr. 9019 are subject to appellate review based on an abuse of discretion.[42]  This standard would have applied had Barton appealed the Settlement Orders.  The Settlement Agreements approved in the Settlement Orders expressly contemplate the entry of the Final Judgment to effectuate the settlements and are entitled to full res judicata effect.[43]  As explained above, the entry of the Final Judgment was a ministerial task to effectuate the settlement approved in the already final Settlement Orders.  Any other action would have improperly denied the Settlement Orders the res judicata effect to which they are entitled.  Similarly, the appeal of the Ratification Order did not render it ineffective.  There was no abuse of discretion by the Bankruptcy Court in undertaking the ministerial act of entering the Final Judgment to give effect to the already final Settlement Orders.

## G.     There were no violations of Barton's due process rights through the entry of the Final Judgment.

39.     Barton argues that the entry of the Final Judgment infringed upon his due process rights by "denying him meaningful appellate review," presumably a reference to his interlocutory appeal of the Ratification Order through the SEC Lawsuit (Brief, p. 16). The only authority cited for this novel proposition is the

---

[42] *Official Comm. Of Unsecured Creditors v. Cajun Powers Coop*. (*In re Cajun Power Coop.*), 119 F.3d 349, 355 (5th Cir. 1997).

[43] *Adam v. Itech Oil Co*. (*In re Gibraltar Resources, Inc.*), 210 F.3d 573, 576 (5th Cir. 2000).

U.S. Supreme Court's opinion in *Mathews v. Eldridge*, 424 U.S. 319, 334-335 (1976), an opinion addressing due process requirements in relation to a termination of Social Security disability benefits. Nothing in this opinion even remotely suggests that Barton's due process rights were violated through the entry of the Final Judgment as required by the final Settlement Orders.

40.     However, Barton once again conflates the Adversary Proceeding (pending before the Bankruptcy Court) and the SEC Lawsuit (pending before the District Court in Dallas).  In relation to the entry of the Final Judgment in the Adversary Proceeding, Barton received complete and proper due process.  The Settlement Orders were entered by the Bankruptcy Court with full notice to Barton. In fact, Barton's counsel appeared at the hearing and vigorously argued against the approval of the settlement.  Once the Settlement Orders were entered, Barton failed to appeal and both orders became final for all purposes.  After the Settlement Orders became final, the Final Judgment was entered to effectuate the settlement. Barton's failure to appeal the Settlement Orders had significant legal consequences as to his legal rights.  However, the consequences attached to Barton's failure to appeal do not constitute a deprivation of due process.

41.     Any argument that Barton was deprived of due process in relation to the appeal of the Ratification Order is an issue to be addressed through the SEC Lawsuit and his appeal of that order to the Fifth Circuit.  It is not an issue for this

Court through an appeal of the Final Judgment. Barton's real complaint is that he did not get "meaningful appellate review" because his appeal did not automatically stay the Ratification Order, something which required him to obtain a stay pending appeal by demonstrating the elements for a preliminary injunction.[44] This argument is contrary to the well-established rule that an appeal does not render a judgment or order ineffective absent a stay pending appeal. That is not a deprivation of due process but rather an application of well settled federal law on the effect of an appeal on a judgment or order.

**H.     This appeal is an improper collateral attack in the Settlement Orders.**

   **i.     A collateral attack is one in which the relief sought must in some fashion overrule a prior order or judgment.**

   42.     Barton appealed the wrong order if he wanted to challenge the settlement. To accomplish this, he had to appeal the Settlement Orders, both of which have long since become final. This appeal is nothing more than an improper collateral attack on the Settlement Orders. In the Fifth Circuit, a proceeding is a collateral attack on a prior order or judgment if granting the relief requested "must

---

[44] The elements to obtain a stay pending appeal are (a) a strong likelihood of success on the merits, (b) irreparable harm in the absence of an injunction, (c) the balance of hardships favors granting the injunction relief, and (d) the public intent favors such relief. *NAACP v. Tindall*, 95 F.4th 212, 215 (5th Cir. 2024).

in some fashion overrule a prior judgment."[45]  This remains the settled rule in the Fifth Circuit.[46]

43.     Outside the Fifth Circuit, courts have applied a similar definition of a collateral attack based upon the same concept.  An Oklahoma district court explained a collateral attack on a judgment as "any proceeding in which the integrity of the judgment is challenged, except for a challenge made in the action in which the judgment is rendered, or by appeal."[47]  A bankruptcy court in Pennsylvania defines a collateral attack as one which "attempts to avoid, defect, or evade, or otherwise attempts to deny a prior decrees force and effect; thus, a subsequent lawsuit attempts a collateral attack if it seeks in some manner to overrule a prior judgment."[48]  A Hawaii bankruptcy court characterized a collateral attack as an action which seeks to avoid, defeat, evade, or deny the force and effect of a prior judgment or order in some manner other than a direct post-judgment motion or appeal.[49]

---

[45] *Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358, 360 (5th Cir. 1972), citing *Mitchell v. Village Creek Drainage Dist. 8*, 158 F.2d 475, 478 (8th Cir. 1946).

[46] *In re Apex Long Term Acute Care-Katy, L.P.*, 598 B.R. 314. 320 (Bankr. S.D. Tex. 2019), citing *Miller*, 462 F.2d at 360. ("The Fifth Circuit has held that even where an action is has an independent purpose and contemplates some other relief, it is a collateral attack if it must in some fashion overrule a previous judgment"); *Cairns v. LSF6 Mercury Reo Invs. Trust Series 2008-1*, 2014 U.S. Dist. LEXIS 177855 *13 (W.D. Tex. 2014).

[47] *Kuncl v. IBM*, 660 F. Supp. 2d 1246, 1255 (N.D. Ok. 2009).

[48] *Off Comm. of Unsecured Creditors v. Bechtle* (*In re Labrum & Doak, LLP*), 237 B.R. 275, 289 (Bankr. E.D. Pa. 1999), citing *Kurz v. Mairone*, 1987 U.S. Dist. LEXIS 4514 *3 (E.D. Pa. May 29, 1987), and *Meinhard*, 462 F.2d at 360.

[49] *Field v. Henshaw* (*In re Henshaw*), 569 B.R. 800, 806 (Bankr. Hawaii 2017).

44.    The entry of the Final Judgment was a ministerial act to give effect to the settlement approved in the final Settlement Orders.  The Final Judgment cannot be reversed and set aside without overruling the Settlement Orders and depriving them of their intended effect of approving and implementing the settlement.  As such, this appeal constitutes an improper collateral attack on the Settlement Orders.

## ii.    The Settlement Orders are entitled to full res judicata effect.

45.    The concept of a collateral attack amounts to giving effect to the res judicata effect of a final judgment or order by precluding any relief which overrules or defeats the relief granted in the order or judgment given res adjudicata effect.  In order to apply res judicata to an order or judgment, in the Fifth Circuit (a) the parties must be identical in both proceedings, (b) there must have been a final judgment on the merits, and (c) the same cause of action must be involved in both cases.[50]  A bankruptcy court's order approving a settlement is given res judicata effect as a final order.[51]

46.    The Settlement Orders are entitled to res judicata effect in relation to the Final Judgment and Barton's appeal thereof.  First, the parties are the same.

---

[50] *Brown v. Chesnut* (*In re Chesnut*), 356 F.2d Appx. 732, 736 (5th Cir. 2006) (unpublished), citing *Nilsen v. City of Moss Point, Miss.*, 701 F.dd 556, 559 (5th Cir. 1983)(en banc), quoting *Kemp v. Birmingham News. Co.*, 608 F.2d 1049, 1052 (5th Cir. 1979); accord, *Ries v. Page*, 610 F.3d 865, 870 (5th Cir. 2010), citing *City of Moss. Point*, 701 F.2d at 559.

[51] *Adam v. Itech Oil Co.* (*In re Gibraltar Resources, Inc.*), 210 F.3d 573, 576 (5th Cir. 2000).  ("A bankruptcy court's approval of a settlement order that brings to an end litigation between parties is a final order.  A bankruptcy court's final orders are appealable as a matter of right under 28 U.S.C., § 158.  A settlement agreement approved and embodied in a judgment by a court is "entitled to full res judicate effect").

Both the Final Judgment and the Settlement Orders relate to BM318 as the party asserting the Avoidance Actions and as a party to the settlement and Final Judgment. All creditors and parties in interest claiming through BM318 (including all those in privity with BM318) are bound by the Settlement Orders.[52] This includes Barton to the extent that he asserts any rights through BM318.

47.    The Settlement Orders were rendered by the Bankruptcy Court as a court of competent jurisdiction. The Bankruptcy Court had exclusive *in rem* jurisdiction over all assets of the bankruptcy estate,[53] including the Avoidance Actions which are the subject to the settlement. The approval of a settlement under Bankruptcy Rule 9019 is a core proceeding.[54] The Bankruptcy Court in this case exercised this core jurisdiction in entering the Settlement Orders.

48.    Lastly, the order or judgment must be on the merits and must relate to the same cause of action. In this case, the Settlement Orders and the Final Judgment all address the merits of the settlement and relate to the same subject matter which is the settlement of BM318's Avoidance Actions.

---

[52]  *Meinhard-Commercial*, 462 F.2d at 360 (with regard to a plan of arrangement, is binding of those in priority with the debtor).

[53]  28 U.S.C., Section 1334(e).

[54]  28 U.S.C., Section 157(b)(2)(A) and (O). *Milden v. Joseph (In re Milden)*, 1997 U.S. App LEXIS 7726 *8 (9th Cir. 1997) (unpublished), citing *In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1989) (The approval of compromise of a claim held by the estate is a core proceeding under 28 U.S.C., section 157 (b)(2)(A) and O)); *accord, In re Imperial Tooling & Mfg.*, 314 B.R. 340, 342 (Bankr. N.D. Tex. 2004); *In re Grodsky*, 2014 U.S. Dist. LEXIS 143940 *4 E.D. La. 2014).

49.    The preclusive effect of a bankruptcy court order approving a settlement is illustrated by a 2000 Fifth Circuit opinion in *Adam v. Itech Oil Co.*, 210 F.3d 573 (5th Cir. 2000).  In that case, the debtor held record title to a portion of the working interest in an oil and gas well.  A group of investors asserted a pre-petition interest in the well, and filed proofs of claim in the bankruptcy case asserting a general unsecured claim, but also asserting alternatively that each of them owned a part of the working interest in the well.[55]  A dispute arose between the Chapter 7 trustee and the operator of the well, Itech, over ownership of the well.  This adversary proceeding was settled between the trustee and Itech, with the bankruptcy estate receiving an interest in the well.[56]  The investors appeared at the hearing to approve the settlement, objected to the settlement, and asserted that they owned an interest in the well.  These objections were overruled, and the settlement was approved.  Like Barton, the investors did not appeal the bankruptcy court's order approving the settlement.[57]

50.    The investors then filed an adversary proceeding (referred to in the opinion as the "Hannusch Well Adversary") against Itech, Itech's president, and the Chapter 7 trustee asserting that they owned working interests in the well which the trustee received pursuant to the settlement.  The investors also sued Itech and

---

[55]  210 F.3d at 574-75.

[56]  *Id.*

[57]  *Id.*

its president for damages. The bankruptcy court denied any relief against Itech and its president on the basis that the investor/plaintiffs had released their claims through the settlement. The district court affirmed holding that, because the investor/plaintiffs were beneficiaries of the bankruptcy estate represented by the trustee, they were bound by the settlement. The investor/plaintiffs then appealed to the Fifth Circuit claiming that they asserted causes of action which were not property of the estate and that they were not parties to the settlement, presumably asserting that they were not, as a consequence, bound by the settlement.[58]

51.    The Fifth Circuit gave res judicata effect to the bankruptcy court's order approving the settlement and affirmed the judgment of the district court. Because the settlement treated the investor/plaintiffs as creditors of the bankruptcy estate and not as working interest owners, they were precluded from asserting causes of action premised upon assertions that they were really working interest owners in the well.[59] The Fifth Circuit rather tersely rejected the investor/plaintiffs' claims as follows:[60]

> A bankruptcy court's approval of a settlement order that brings to an end litigation between the parties is a "final" order.[61] A bankruptcy court's final orders are appealable as a matter of right under 28 U.S.C. § 158. **A settlement**

---

[58] *Id.* at 575-76.

[59] *Id.* at 576-77.

[60] *Id.* (internal citations omitted).

[61] *Id.* Citing *In re Cajun Power Coop., Inc.*, 119 F.3d 349, 354 (5th Cir. 1997); *In re West Texas Marketing Corp.*, 12 F.3d 497, 501 (5th Cir. 1994), and *In re Medomak Canning*, 922 F.2d 895, 900 (1st Cir. 1990).

agreement approved and embodied in a judgment by a court is "**entitled to full res judicata effect.**"[62] "**Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in the action.**"[63]

\*\*\*

We conclude that because Plaintiffs failed to appeal the bankruptcy court's order approving the Itech Adversary Settlement, that settlement is binding on Plaintiffs and precludes their action in the Hannusch Well Adversary. Plaintiffs' theory of their case is the Hannusch Well Adversary was that Plaintiffs were working interest owners in the well rather than a general unsecured creditors of Debtor's estate. Plaintiffs argued, for this reason, the Trustee's actions in the Itech Adversary could not bind them. **However, the Plaintiffs failed to appeal the bankruptcy court's order, approving the Itech Adversary settlement, premised on the fact that Plaintiffs were creditors of the estate and not working interest owners. The bankruptcy court's unappealed order approving the settlement became binding upon the Plaintiffs and they are not entitled to relitigate the issue resolved in that order**.

(internal citations omitted, emphasis added)

### iii. The res judicata effect of the Settlement Orders precludes any challenge by Barton to the Final Judgment.

52. Giving the Settlement Orders res judicata effect bars both BM318 and anyone in privity with BM318 (including Barton) from relitigating the propriety of the settlement through an appeal of the Final Judgment. As evidenced by the *Itech*

---

[62] *Id.* Citing *West Texas Marketing*, 12 F.3d at 500.

[63] *Id.* Citing (*Medomak*, 992 F.2d at 900, quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

*Oil* opinion, the Settlement Orders satisfy all requirements for the application of the doctrine of res judicata:

a) The Settlement Orders are final orders appealable as a matter of right;[64]

b) BM318 was a party to both the Final Judgment and the Settlement Orders;[65]

c) Both the Final Judgment and the Settlement Orders relate to the same cause of action, here the settlement of BM318's Avoidance Actions. The Final Judgment is an agreed judgment which gives effect to the settlement approved in the Settlement Orders;[66] and

d) BM318 is bound by the Settlement Orders. As a purported privy of BM318, or as a person attempting to claim through BM318, Barton is also bound by the Settlement Orders.

## I. Barton's cases are inapposite and have no bearing on the present appeal.

53. The five cases cited in Barton's Brief are all inapposite and have no application to the issues in this appeal.

54. The *Markarian* case encompasses two separate but related opinions.

---

[64] *Itech*, 210 F.3d at 576.

[65] *Id.*; See also *City of Moss Point*, 701 F.2d at 559.

[66] *Id.*

The first opinion involved an objection to the discharge of a claim against the debtor under section 523(a) as one based on fraud. The First Circuit Bankruptcy Appellate Panel (B.A.P.) upheld the bankruptcy court's judgment of non-dischargeability.[67] The second opinion, which is cited by Barton, is very strange.[68] Before the B.A.P. rendered its non-dischargeabiity opinion, the debtor settled the dischargeability adversary proceeding. The bankruptcy court approved the settlement and dismissed the bankruptcy case. Based on the dismissal of the bankruptcy case, the bankruptcy court also dismissed the dischargeability adversary proceeding in which the appeal was pending.[69] At the time the settlement was approved and the bankruptcy case dismissed, the appeal was under submission to the B.A.P.[70] Unfortunately, no one advised the B.A.P. of the settlement and the dismissal of the bankruptcy case. Months after the dismissal, the B.A.P. delivered the first part of the opinion affirming the bankruptcy court's non-dischargeability judgment against the debtor. After the B.A.P. delivered its opinion, the debtor moved to vacate the opinion *nunc pro tunc* back to the date of the dismissal of the bankruptcy case (which was eight months before the opinion was published). Recognizing that the substantial work invested by the panel in the

---

[67] *In re Markarian*, 228 B.R. 34 (1st Cir. B.A.P. 1998). The first part of the opinion includes pages 35 through 46.

[68] The second part of the opinion starts at page 46 and goes through page 48.

[69] 228 B.R. at 46.

[70] *Id.*

first opinion had all been for naught, the B.A.P. was understandably miffed.

55.     The debtor asserted that the appeal should be dismissed *nunc pro tunc* because, after the settlement, there was no case or controversy.  Applying the *Griggs* principle, the B.A.P. concluded that the appeal divested the bankruptcy court of control over the non-dischargeability case.  As such, the bankruptcy court lacked jurisdiction over the dischargeability lawsuit and could not dismiss it while the appeal was pending before the B.A.P.[71]  At page 15 of his Brief, Barton cites *Markarian* for the apparent proposition that the appeal of an order approving a settlement agreement prevented the consummation of the settlement while the appeal was pending.  This is completely wrong.  The numerous citations of authority above establish the black letter proposition that an order or judgment remains effective post-appeal unless there is a stay pending appeal.  Nothing in the *Markarian* opinion suggests that Barton's appeal of the Ratification Order rendered it ineffective or divested the Bankruptcy Court of its exclusive *in rem* jurisdiction over the Avoidance Actions and the settlement.[72]  Indeed, this Court's recent opinion in *Big Picture Loans* holds to the contrary.

---

[71] *Id.* at 47.

[72] The statement that the bankruptcy court lacked jurisdiction to enter the order dismissing the bankruptcy case appears questionable until the docket of the bankruptcy case (Case no. 95-40961 in the U.S. Bankruptcy Court for the District of Massachusetts) is reviewed.  The bankruptcy court entered an order approving the settlement and dismissing the bankruptcy case.  The adversary proceeding (Adv. Dkt. No. 95-4130) was then closed.  Thus, the order dismissing the main bankruptcy case appears to have served the dual purpose of also dismissing the adversary proceeding.  This led the B.A.P. to state that the bankruptcy court lacked jurisdiction to enter the order dismissing the bankruptcy case.  Ordinarily, the appellate court's jurisdiction would be limited to the subject matter of the

56.     *FBI Distribution Corp.*,[73] also an opinion from the First Circuit B.A.P., involved a motion to approve a settlement with the B.A.P.  Citing *Markarian*, the B.A.P. noted that when an appeal is filed, the lower court loses jurisdiction over the subject matter of the appeal.[74]  This opinion is not contrary to the black letter rule that an appeal does not render a judgment ineffective or unenforceable.  Nothing in the opinion suggests that Barton's appeal rendered the Ratification Order ineffective absent a stay pending appeal or divested the Bankruptcy Court of its exclusive *in rem* jurisdiction over the Avoidance Actions and the settlement.[75]

57.     *Mathews v. Eldridge*[76] deals with due process requirements in relation to the termination of Social Security benefits.  While the case is often cited as to

---

appeal.  Matters pending in the main bankruptcy case, outside of the adversary proceeding, would be unaffected by an appeal through the adversary proceeding and would be outside of the jurisdiction of the appellate at court.

[73]  267 B.R. at 655.

[74]  *Id.* at 656.

[75]  The B.A.P.'s statement that the bankruptcy court had no jurisdiction to approve the settlement is very questionable and contrary to the settled practice employed in most bankruptcy and district courts.  While the appeal divests the bankruptcy court of jurisdiction over the subject matter of the appeal, the bankruptcy court, retains its exclusive *in rem* jurisdiction over the remainder of the bankruptcy case.  This was the holding of this Court in *Big Picture Loans*, 2024 U.S. Dist. LEXIS 113315 *6-9.  This includes the bankruptcy estate's property rights in the matter under appeal.  In the case of an adversary proceeding, the underlying cause of action remains an asset of the bankruptcy estate subject to the bankruptcy court's exclusive *in rem* jurisdiction.  The bankruptcy court generally exercises this jurisdiction to approve the settlement and then the parties implement the settlement by filing appropriate pleadings (generally, a joint motion to dismiss) with the appellate court.  This is necessary because the appellate court cannot act as a trial court giving notice to parties in interest of the settlement and taking evidence regarding the merits of the proposed settlement.  This avoids the strange and cumbersome procedure employed in the *FBI Distribution* with B.A.P. remanding the case to the bankruptcy court to give notice of the settlement and take evidence regarding the approval of the settlement, then once that bankruptcy court's order become final sending the matter back to the appellate court, and lastly for the appellate court to address the settlement.

[76]  424 U.S. at 334-35.

34

what is necessary to provide proper due process, it has no relation to the issues in this appeal and does not in any manner question the established federal jurisprudence that the filing of an appeal does not render the appealed order or judgment ineffective.

58.     *The* cited portions of the last two cases, *In re Texaco, Inc.*[77] and *In re Nutritional Sourcing Corp.*,[78] deal with the standards for approving a settlement under Bankr. R. Pr. 9019.  As page 25 of his Brief, Barton suggests that, applying these precedents, his "appeal raises substantial questions regarding the fairness and adequacy of the settlement, specifically whether it adequately reflects the value of BM318's claims and serves the best interests of the bankruptcy estate."  The obvious problem with this argument is that Barton failed to appeal the Settlement Orders which have become final.  If he wanted to contest the merits of the settlement through an appeal, he had to timely appeal the Settlement Orders.  As explained above, the Settlement Orders are entitled to full res judicata effect,[79] and preclude Barton from re-litigating his earlier objection which the Bankruptcy Court overruled.  While Barton might have been able to make these arguments relating to the merits of the settlement in a direct appeal of the Settlement Orders, he failed to do so and cannot collaterally attack the now final Settlement Orders.

---

[77]  84 B.R. 893, 901-02 (Bankr. S.D.N.Y. 1988).

[78]  398 B.R. 816, 837 (Bankr. D. Del. 2008).

[79]  *Itech Oil*, 210 F.3d at 576.

# VIII.    Conclusion

59.    Barton's appeal of the Final Judgment is frivolous, including for the following reasons:

a)    Barton lacks standing to appeal the Final Judgment as a non-party to the Adversary Proceeding.  The record in no manner demonstrates that, as a non-party, Barton has appellate standing;

b)    The appeal of the Ratification Order through the SEC Lawsuit did not (and could not) divest the Bankruptcy Court of its exclusive *in rem* jurisdiction over the matters relating to the Adversary Proceeding, including both the Avoidance Actions and the settlement thereof;

c)    Because Barton failed to obtain a stay pending appeal, his appeal did not render the Ratification Order ineffective;

d)    Entering the Final Judgment was ministerial in nature to give effect to the settlement approved in the Settlement Orders.  There was no abuse of discretion by the Bankruptcy Court in entering the Final Judgment to give effect to the already final Settlement Orders;

e)    Barton's rights to due process were not violated by the Bankruptcy Court entering the Final Judgment as required by the final Settlement Orders;

f)    This appeal of the Final Judgment amounts to an improper collateral attack upon the Settlement Orders which are entitled to full res judicata effect.

Giving the Settlement Orders res judicata effect bars Barton's appeal of the Final Judgment which was a ministerial act to give effect to the settlement approved in the Settlement Orders; and

      g)    Barton's authorities are all inapposite and have no bearing on the issues before the Court in this appeal.

## **Prayer**

WHEREFORE, for the reasons set forth above, Lumar respectfully requests that the Court affirm the entry of the Final Judgment by the Bankruptcy Court and for all such other and further relief as the Court may deem just and proper.

Date:  December 3, 2024          Respectfully submitted,

<br>

*/s/ J. Robert Forshey*_____
J. Robert Forshey
Texas Bar No. 07264200
bforshey@forsheyprostok.com
Emily S. Chou
Texas Bar No. 24006997
echou@forsheyprostok.com
**FORSHEY PROSTOK, LLP**
777 Main Street, Suite 1550
Fort Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151

**COUNSEL FOR LUMAR LAND & CATTLE, LLC**

**- and -**

*Kimberly P. Harris*
Texas Bar No. 24002234

37

kharris@qslwm.com
Joshua L. Shepherd
Texas Bar No. 24058104
jshepherd@qslwm.com
**QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 871-2100
Facsimile: (214) 871-2111

COUNSEL FOR INTERVENOR LUMAR LAND
& CATTLE, LLC

## CERTIFICATE OF COMPLIANCE

I hereby certify that his brief complies with the type-volume limitation of Federal Rule of Bankruptcy Procedure 8015(a)(7)(B).  The brief contains 10,982 words, excluding the parts of the brief exempted by Federal Rule of Bankruptcy Procedure 8015(g).

This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font, consistent with the requirements of Federal Rule of Bankruptcy Procedure 8015(a)(5) and (6).

Dated: December 3, 2024

*/s/ J. Robert Forshey*
J. Robert Forshey
Texas Bar No. 07264200
bforshey@forsheyprostok.com
Emily S. Chou
Texas Bar No. 24006997
echou@forsheyprostok.com
**FORSHEY PROSTOK, LLP**
777 Main Street, Suite 1550
Fort Worth, TX  76102
Telephone: (817) 877-8855
Facsimile:  (817) 877-4151

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on December 3, 2024, a true and correct copy of the foregoing document was served by electronic transmission via the Court's ECF system upon all parties registered to receive electronic notice .

*/s/ J. Robert Forshey*_____
J. Robert Forshey

L:\BFORSHEY\Lumar Land & Cattle, LLC (BM318)(non-bnkrptcy)#6323\Appeal No. 4-24-cv-00863-P\Lumar's Appellee Brief (14 pnt Times font) (BF & ECv) 12.3.24.docx